CASE 68.—ACTION BY HARRY WEISINGER AND ANOTHER AGAINST THE SOUTHERN RAILWAY IN KENTUCKY FOR DAMAGES IN NEGLIGENTLY SHIPPING HOGS.—October 6.

# Weisinger, &c., v. Southern Ry. in Ky.

Appeal from Shelby Circuit Court.

JOHN DOOLIN, Special Judge.

Judgment for defendant, plaintiff appeals — Reversed.

1. Carriers—Transportation of Live Stock—Designation of Cars. —A carrier's duty to designate the car in which hogs offered for shipment shall be loaded is not sufficiently performed by the exercise of ordinary care.

2. Same—Misdirection.—Where a shipper is directed by a carrier's agent to load hogs in the wrong car, the carrier is responsible for such damages as naturally result from removal of the hogs required by the carrier; but if the shipper loads the hogs in the wrong car, without inquiry from the carrier's agent, he assumes the risk.

3. Same—Proximate Cause—Instructions.—Where plaintiff's hog, intended for shipment, was loaded in the wrong car, as plaintiffs alleged by misdirection of defendant's agent, and the hog died as the alleged result of plaintiffs being compelled to transfer him to another car, the court, in an action for the death of the hog, should have charged that if he was in such condition that he would have died, notwithstanding the removal, or if defendant's agent offered to let the hog remain until he could be safely removed, or if plaintiffs were themselves negligent in not loading him into the car designated, or if his death resulted from the careless manner in which

Weisinger, &c. v. Southern Ry. Co. in Ky.

he was removed and thereafter handled, plaintiffs could not recover.

4. Same—Evidence—Identity.—In an action against a carrier for death of a hog alleged to have been caused by defendant's agent in requiring his removal from one car to another, evidence that on the night in question, when several hogs were driven to the station with others, witness heard a hog squealing, was inadmissible to support defendant's claim that the hog was very hot and would probably have died, notwithstanding his removal, unless the hog that squealed was identified as that in question.

BEARD & MARSHALL for appellant.

We submit:

1. That the railroad company owed the duty to provide a suitable car and suitable facilities for loading and unloading live stock shipped on its road.

2. The court erred in refusing instructions offered by the plaintiff and erred in the instructions given.

3. The court erred in permitting incompetent testimony for the defendant against the objection of the plaintiff.

4. The record shows that the death of plaintiffs' hog was caused solely by the negligence of the defendant in causing him to be removed after he had been properly loaded by plaintiff in a car designated by defendant.

### AUTHORITIES CITED.

Cyc. vol. 6, p. 523, 524; Am. & Eng. Ency. of Law, vol. 5, pp. 430, 443, 543; Covington Stock Yards v. Keith, 139 U. S., 128.

WILLIS & TODD for appellee.

The appellee relied upon three propositions, in presenting its defense, every one of which was maintained by the evidence:

1. Appellee's agent was in no manner negligent.

2. The hog would have died if let in the car where first placed.

3. If the second proposition be not true, the contributory negligence of appellant's agent so contributed to the death of the hog that same would not otherwise have occurred. (McLain v. Dibble & Co., 13 Bush, 298; Commonwealth v. Williams, 14 Bush, 297; Jones v. Wocher, 90 Ky., 230.)

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
missioner—Affirming.

Appellants, Harry Weisinger and son, are engaged
in the business of farming and stock-raising, and live
about two miles from Shelbyville Ky. On August 7,
1907, they contracted with appellee to furnish them.
a car suitable for shipping fine hogs from Shelbyville
to Lexington, Ky., where they were to be exhibited
at the Blue Grass Fair. Appellants had six hogs.
which they desired to ship, and arrangements were
made by which these hogs were to be placed in the
same car in which one Frank Smith proposed to ship
his hogs; appellants to have the use of one half of
the car, and Smith the use of the other half. On
August 10, 1907, about 8:30 p. m., appellant's six
hogs were brought to appellee's depot in Shelbyville
for the purpose of being loaded for shipment to Lex-
ington. Smith, who was to use the other half of the·
car, reached the depot. shortly before the employes
of appellants. The latter, upon arriving at the depot,
went immediately to appellant's agent for the pur-
pose of obtaining directions as to which car the hogs
should be loaded in. According to the testimony for
appellants, appellee's agent designated as the car in
which the former's hogs were to be shipped the car
that was by Henry Moxley's car, and in which Smith
had already loaded his hogs. The testimony of ap-
pellee is to the effect that its agent stated to appel-
lants' employes that their car was next to Moxley's
car, that he had shown it to Smith's son, and that
they would probably find him at that car. Appellant's
employes then went to the car in which Smith had
been loading his hogs, and proceeded to load their·

hogs in the same car. Shortly thereafter appellee's agent came to the car and notified appellant's employes that they had loaded their hogs in the wrong car; that it would be necessary for them to unload the hogs and place them in the car which had been ordered for that purpose. Appellant's employes stated that it would be dangerous to remove the hogs at that time and that they would only do so at the risk of the company. Appellee's agent says that he gave them the privilege of letting the hogs remain in the car in which they had been placed. This is denied by appellants' employes, who assert that they were required to remove them at the time. Among the six hogs which appellants' employes brought to the station for shipment was one fine, large boar weighing 600 or 700 pounds, and it is claimed the agent was notified that the removal of this boar would in all probability result in his death. The hogs were then unloaded and moved into another car. Soon thereafter the boar died.

Appellants instituted this action for the value of the hog, which the petition alleges was $1,500, claiming that its death was due to the negligence and carelessness of appellee, its servants, agents and employes. Appellee denied any negligence on its part, and also pleaded contributory negligence on the part of appellants. The jury returned a verdict in favor of appellee. From the judgment based upon that verdict the appellants appeal. Appellants ask a reversal upon three grounds: First, the verdict was contrary to the evidence; second, errors in instructions; third, the admission of incompetent testimony.

First. In view of the fact that the court has determined to reverse the judgment on other grounds, it will be unnecessary to set forth the evidence at

length for the purpose of determining whether or not.
there is any merit in appellant's first contention.

Second.   Appellants asked an instruction to the
effect that it was the duty of the defendant to des'g-
nate the car in which the stock was to be shipped,
and if, by reason of the negligence of the defendant,
the stock was loaded in the wrong car and had to be
unloaded, and that such unloading and reloading
caused the death of the hog, the jury should find for
the plaintiffs the reasonable, vendible value of the
hog.  This instruction was refused.  The court there-
upon instructed the jury that it was the duty of the
defendant and its agents to exercise ordinary and rea-
sonable care under all the facts and circumstances of
the case to properly indicate to the plaintiffs, or their
agents, the car in which the hogs were to be loaded
for transportation to Lexington; that it was also the
duty of plaintiffs, or their agents, on the same occa-
sion, to exercise ordinary and reasonable care under
all the facts and circumstances of the case to ascer-
tain, before proceeding to load their hogs, the proper
car in which the same should be loaded for transporta-
tion to Lexington, and to exercise ordinary and rea-
sonable care to avoid loading their hogs in the wrong
car; that if the jury should believe from the evidence
that the defendant negligently failed to discharge the
duties required of it in the instructions, and if by
reason of any such negligence on its part the hogs of'
plaintiffs were loaded in the wrong car, so that the
removal of them from the wrong car became or was
necessary, and should further believe that the de-
fendant, or its agent, negligently ordered the removal
of the hogs, at a time or in a manner which, in view
of the condition of plaintiffs' hog in question in this
case, would naturally or reasonably result in the

death of said hog, the jury should find for plaintffs, unless they believed from the evidence that the plaintiffs, or their agents, were themselves guilty of contributory negligence. Other instructions were given, which are not complained of.

We are of opinion that the above instruction does not present the law of the case. When a shipper appears at the station of a railroad company with live stock, which he intends to load and ship in the latter's cars, it is the duty of the railroad company to designate the car in which the stock should be loaded. It does not perform its full duty merely by using ordinary care. If the shipper, without first having made inquiry as to the car in which his stock is to be loaded, should load it in the wrong car, he would do so, of course, entirely at his own risk; but if he first inquires of the railroad company, and asks that the proper car be designated, and the latter designates the wrong car, it is liable for such damages as naturally result from the removal made necessary by the improper directions, where such removal is required by the company. Upon the next trial, the court will instruct the jury as follows:

"No. 1. If you believe from the evidence that the defendant or its agents, designated the car in which Frank Smith's hogs were loaded as the car in which plaintiffs should load their hogs, and that plaintiffs did load their hogs in said car, and that the defendant, or its agent, required plaintiffs to unload the hog in question and load him in another car at a time when it was not reasonably safe to do so, and that plaintiffs' hog died as a result of such removal, you will find for plaintiffs the reasonable market value of the hog at said time, unless you believe that plaintiffs failed to use ordinary care in removing and

handling said hog, and that by reason thereof the death of the hog resulted.

"No. 2. If, however, you believe that plaintiff's hog was in such condition that he would have died notwithstanding such removal, or that defendant's agent gave plaintiffs the privilege of letting the hog remain in the car in which it was first loaded until it could be safely removed, or that the defendant did designate the proper car for plaintiffs to load their hog in, and that the plaintiffs were themselves negligent in not loading their hog in the car so designated, or that the hog's death resulted from the careless and negligent manner in which it was removed and thereafter handled, then, in any one of these events, you will find for the defendant."

Third. Appellants insist that the court erred in permitting one J. M. Logan to testify that he heard a hog squealing as it passed his house on the night in question. The purpose of offering this testimony was to show that the hog was very hot at the time, and would have probably died, even though it had not been loaded in one car and subsequently removed to another. On the next trial this evidence should not be admitted, unless that hog that squealed is sufficiently identified as that belonging to appellants.

For the reasons given, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.