## OREGON SHORT LINE RAILWAY COMPANY v. BLYTH.

### (No: 647.)

PRINCIPAL AND AGENT—SHIPMENT OF GOODS BY AGENT—AUTHORITY TO CONTRACT AS TO CARRIER'S LIABILITY—CARRIERS—FREIGHT—LIABILITY OF CARRIER FOR LOSS OF GOODS—NEGLIGENCE—PLEADINGS—CONTRACT LIMITING LIABILITY—VALIDITY—AGENCY—EVIDENCE—OFFER TO CONFESS JUDGMENT—EFFECT AS ADMISSION OF LIABILITY.

1. Where the owner of goods directs his agent to ship the same without further directions or restrictions, the law implies authority in the agent to make a reasonable contract with the carrier limiting the latter's liability; and if such contract is lawful, the principal is bound thereby.

2. A common carrier of goods is not only liable for loss occurring through his negligence or that of his servants or agents, but also for loss or damage occurring from other causes such as fire, robbery or accident not attributable to negligence of the carrier, excepting loss by the act of God or of public enemies.

3. A common carrier may by special contract fairly made, and entered into understandingly, and which is reasonable, limit his common-law liability as an insurer of goods received for transportation,

4. Where, in an action against a carrier for loss of goods received by it for shipment, the petition did not allege negligence on the part of the carrier, and the defense was that the plaintiff through his agent had entered into a written contract at the time of the delivery of the goods for shipment, for the purpose of securing a lower freight rate, by which he assumed the risks of the shipment; *held,* that the question whether the carrier could relieve itself from liability for loss resulting from his negligence was not in the case.

5. In an action against a carrier for loss of goods, which were delivered to it for shipment under a contract that the goods were to be shipped at owner's risk, in consideration of a lower freight rate, where the petition did not allege that the goods were lost through the negligence of the carrier, it was not necessary for the carrier upon proving the special contract exempting it from liability, to show that the cause of the loss came within the exemption and that the goods were not lost through its negligence.

6. It is necessary to allege negligence on the part of the carrier, in an action for loss of goods, if negligence is relied on to avoid a special contract limiting the carrier's liability.

7. At the time of the delivery of goods to a carrier for shipment, the owner's agent signed a contract that in consideration of a lower freight rate upon the carrier being released or the goods shipped at owner's risk, the shipper assumed all the risks necessary to receive the benefit of such lower rate. *Held,* in an action against the carrier for the loss of the goods, there being no allegations in the pleadings that the contract was unreasonable, or that the failure to deliver the goods at destination was the result of negligence of the carrier, that the contract limiting the carrier's liability was valid.

(On petition for rehearing.)

8. While the fact of agency cannot be established by the mere declarations of the one claiming to be an agent, such a one is a competent witness to prove his agency.

9. Where there was no allegation of negligence on the part of carrier, in an action against it for failure to deliver goods to it for shipment, an offer by the carrier to confess judgment for a sum less than the amount claimed did not amount to an admission that the loss of the goods was the result of negligence on its part.

[Decided November 6, 1911.]        (118 Pac. 649.)
[Rehearing denied January 5, 1912.]        (119 Pac. 875.)

ERROR to the District Court, Uinta County; HON. DAVID
H. CRAIG, Judge.

The material facts are stated in the opinion.

*P. L. Williams, D. Worth Clark, H. E. Christmas* and
*H. R. Christmas,* for plaintiff in error.

Upon the facts Blyth, the owner of the goods, was bound
by the acts of his agent, the Redman Van Storage Company.
(5 Ency. L. 305; 6 Cyc. 408; Hill v. R. R. Co., 28 A. &
E. R. R. Cas. 87; Nelson v. R. R. Co., 48 N. Y. 498;
Zimmer v. R. R. Co., 137 N. Y. 460; Smith v. So. Exp.
Co., 104 Ala. 387; R. R. Co. v. McIntire, 82 S. W. 346.)
This is an action *ex contractu,* the plaintiff alleging as a
basis of recovery a breach of the defendant's contract to
safely carry the goods from Salt Lake City, Utah, to Ev-
anston, Wyoming. The release in question is a part of
that contract, and was signed by plaintiff's agent. It was
advisedly entered into. Plaintiff's agent knew that to obtain
a certain freight rate it would be necessary for this con-
tract to be signed. Nothing was concealed, and both parties
understood the legal effect and full import of the entire
contract. The only question, therefore, is whether such a
contract is contrary to law or public policy, so that a ᴄ
will declare it void and unenforceable. We submit that
the contract was a valid one and bound the plaintiff. (1
Hutchinson on Carriers, (3rd Ed.) Sec. 426; R. R. Co.
v. Patrick, 144 Fed. 632; Hill v. R. R. Co., (Wash.) 74
Pac. 1054; Windmiller v. R. R. Co., 101 Pac. 225; At-
kinson v. N. Y. Trans. Co., (N. J.) 71 Atl. 278; Faulk
v. R. R. Co., (S. C.) 64 S. E. 383; Townsend v. Wyatt,
(Mo.) 113 S. W. 1161; Donlon v. R. R. Co., 151 Cal. 763;
Coupland v. R. R. Co., 61 Conn. 531; R. R. Co. v. Mur-
phey, 113 Ga. 514; Rosenfeld v. Ry. Co., 103 Ind. 121;
Pac. Exp. Co. v. Foley, 46 Kan. 457; Hill v. R. R. Co.,
144 Mass. 284; Graves v. Exp. Co., 108 Mich. 572; Adair
v. R. R. Co., 53 Minn. 160; Murphy v. Exp. Co., 99 Minn.
230; Starnes v. R. R. Co., 91 Tenn. 516; R. R. Co. v.

Payne, 86 Va. 481; Ullman v. Ry. Co., 112 Wis. 13; Larson v. R. R. Co., (Utah) 110 Pac. 983.) The contract was a reasonable one. The value of household goods is a very uncertain thing. They may or may not be of a greater value than $5 per hundred weight. However that may be, it appears that the barrels in which the goods were packed had nothing upon them to indicate what their contents were, and there was nothing by which the railroad company could know what the value was. (1 Hutchinson on Carriers, (3rd Ed.) Sec. 477.) The consideration for the contract was the reduced freight rate. Plaintiff himself, through his agent, declared the valuation. The bill of lading containing the release was sent to him, and he did not repudiate it, but expressly affirmed it by taking the goods which reached the destination and paying the reduced rate which had been obtained on account of the release. He cannot now repudiate the contract.

*R. S. Spence,* for defendant in error.

The plaintiff was in Evanston and his goods were in Salt Lake City. He engaged the services of the storage company to pack the goods and ship them to Evanston. Nothing was said as to how they were to be shipped. The freight was to be paid at destination. The storage company had no right to assume authority to make a contract with the carrier. The one who acted for the storage company stated that he signed the release on his own volition, without instructions from anyone, because it was his custom to do so. He cannot be held to have been the agent of Blyth. Agency was not proven, either expressly or impliedly. (Russell v. R. R. Co., 70 N. J. L. 808; R. R. Co. v. Hamlin, 42 Ill. App. 441; R. R. Co. v. Ashley, 67 Fed. 209.) A carrier of goods cannot limit the extent of its liability for negligence by an agreed valuation, in consideration of reduced rates, when the agreed valuation is greatly less than the real value, though the contents of the package or their value are not disclosed to the carrier. In an action to recover the loss of an article having no marked value, the

méasure of damages is the value to the plaintiff. (So. Exp.
Co. v. Owens, 146 Ala. 412; Donalson v. Graham, 2 O.
St. 131; 86 N. W. 10; 85 Am. St. 458; 18 Atl. 503; 15
Am. St. 672.) The liability of a common carrier is some-
times of a dual nature. (1) Loss by his own negligence or
omission of duty. (2) Liability as an insurer. (R. R. Co.
v. Little, 71 Ala. 611.) It is well settled that by special
contract the carrier may limit his liability as an insurer.
(146 Ala. 412; Steel v. Townsend, 79 Am. Dec. 49; Ry.
Co. v. Hopko, 94 Am. Dec. 607; 23 Am. Dec. 578.) But
the carrier can make no contract exempting him from lia-
bility for negligence. (Ry. Co. v. Hughart, 90 Ala. 36;
114 Pac. 92; 113 Pac. 805, 1005, 1011; 2 Ency. L. (1st
Ed.) 822; 132 Ala. 437; 31 So. 501; 14 S. W. 311; 57
Am. Rep. 227; 47 Am. Rep. 781; 16 N. W. 497; 2 Pac.
82; 46 Am. Rep. 104; 28 O. St. 144; 55 Wis. 319; 13
N. W. 244; 42 Am. Rep. 713; 53 Am. Rep. 500; 34 Am.
Rep. 197; 2 N. E. 344; 9 S. W. 749; 2 L. R. A. 75; 13
Am. St. 776.) The carrier is held to that degree of dili-
gence which all careful and prudent men take in their own
affairs, and he is responsible for all loss arising from a
neglect of that degree of diligence enjoined upon him by
his public employment; and public policy forbids that he
should be relieved by special agreement from that degree
of diligence and fidelity which the law exacts in the dis-
charge of his duties. The degree of diligence required of
a common carrier is declared by law and is a matter over
which he has no control. (146 Ala. 412; 31 So. 501; 8
So. 62; 79 Am. Dec. 49; 2 O. St. 131; 50 Am. Dec. 659;
Ry. Co. v. Lockwood, 17 Wall. 357; 6 How. 344; 21 L.
Ed. (U. S.) 627; 8 Rose's Notes, 48; 95 U. S. 658; 67
Fed. 212; 79 Fed. 566; 85 Fed. 948; 43 N. E. 811; 66
Am. St. 258; 44 Pac. 934; 39 Ia. 249; 65 Tex. 647; 44
N. E. (Mass.) 612, 33 L. R. A. 846; 58 N. W. 783; Hart
v. Ry. Co., 112 U. S. 338; 109 U. S. 126; 124 U. S. 478;
129 U. S. 439; Ry. Co. v. Stevens, 5 Otto, 655; Liverpool
&c. v. Phoenix, 9 Sup. Ct. R. 469.)

(On petition for rehearing.)   The only attempt to prove agency was the evidence of the shipping clerk of the storage company.   The agency of the company ended when it carried out its instructions to pack and ship the goods.   Its clerk had no power to bind the plaintiff.   Agency may not be established by the mere declaration of one claiming to be an agent.   (R. R. Co. v. Clift, 134 S. W. 917;  Madeley v. Kellam, 135 S. W. 659;  Gonig v. Robinson, 135 S. W. 715.)   If the storage company was an agent of the plaintiff, the contract should have been signed in the name of the principal.   This contract was signed by the storage company, and it does not appear that the plaintiff authorized or consented to it.   (Gillespy v. Hollingsworth, 53 So. 987.) We again contend that the contract is not a valid one. (R. R. Co. v. Stupeck, 114 Pac. 646;  Wells v. Ry. Co., 114 Pac. 92;  Coggs v. Barnard, 1 Smith's L. Cas. 369-376.)   If the contract was a valid one, then the judgment should have been for $20 and costs.   In that event the court should have accepted the confession of the defendant company for $20 upon its offer to confess judgment.   We contend that negligence is presumed without pleading it, and this contention is conceded in the answer by the offer to confess judgment for a stated amount.   (Wells v. Ry. Co., 114 Pac. 92;  1 Phillips on Ev. 635.)   When there is an obligation to take care of goods, if they are injured, the presumption is that it was the result of negligence.   (Grinde v. Ry. Co., 42 Ia. 376.)   The plain duty of the storage company was to ship the goods and no more.   It had no right or authority to place a fictitious value on the goods. (Ry. Co. v. Rogers, 113 Pac. 805;  Estes v. Ry. Co., 113 Pac. 1005;  Ry. Co. v. Rainey, 34 Pac. 986;  R. R. Co. v. Hamlin, 42 Ill. App. 441;  Ry. Co. v. Hall, 4 Ann. Cas. 128;  4 Ann. Cas. 1106;  Exp. Co. v. Owens, 9 Ann. Cas. 1143;  2 Ency. L. (1st Ed.) 821, 823.)

BEARD, CHIEF JUSTICE.

This action was brought by the defendant in error, Charles P. Blyth, against the plaintiff in error, The Oregon Short

Line Railway Company, a corporation, to recover the value of two barrels of chinaware which he alleged had been lost in shipment. The case was tried to the court without a jury, and judgment rendered in favor of the plaintiff below for $289.50, the value of the goods as found by the court. The railway company brings error.

The plaintiff alleged in his petition, after alleging that defendant was a common carrier from Salt Lake City, Utah, to Evanston, Wyoming, that "The plaintiff on the 20th day of August, 1907, delivered to the defendant, and the defendant received as such common carrier, certain goods and property of the plaintiff, namely, two (2) barrels of chinaware, containing also ½ doz. pairs socks, 1 pair spurs, 1 pair putts, 1 razor, 1 strop, 1 brush and mug, of the value of two hundred and eighty-nine and 50/100 dollars, to be by the defendant taken care of and safely and securely carried from Salt Lake City, Utah, to Evanston aforesaid, and there delivered within a reasonable time in that behalf and for a reasonable reward paid by plaintiff to defendant. That reasonable time for carrying the said goods has elapsed. The defendant has not taken care of or safely or securely carried the said goods from Salt Lake City, Utah, to Evanston, Wyoming, aforesaid, or there delivered the same to plaintiff as aforesaid, whereby the said goods have been lost to the plaintiff, to the plaintiff's damage in the sum of two hundred and eighty-nine and 50/100 dollars." The defendant answered, that at the time of the delivery of said goods to the company for shipment, the shipper entered into a written contract on behalf of the plaintiff, containing the terms and conditions on which the defendant undertook to transport the property, one of which was as follows: "Release. I hereby certify that I desire to receive the benefit of any lower rate provided for freight conditional upon carrier being released, or at owner's risk; and in consideration of such lower rate being applied on the within named shipment, I assume all risks necessary to receive such benefit. It is also hereby

agreed that the value of the property does not exceed $5.00 per cwt.

"August 20th, 1907.

"(Signed)    REDMAN VAN & STORAGE."

· That the shipper knew at the time that a higher rate was required for property of greater value than five dollars per hundred weight. That the defendant relying on the statement and agreement of the shipper that the property was of the value of five dollars per hundred weight and no more, and that the risk incurred in case of accident would be only five dollars per hundred weight, accepted said property for shipment upon said valuation, and at a rate based thereon. That plaintiff was estopped to claim that the property was of greater value than five dollars per hundred pounds and that the weight of the two barrels was four hundred pounds; and it offered to confess judgment for $20.00 and costs of suit.

For reply, plaintiff denied the allegations with respect to the contract, and averred that no one had authority to make any contract binding his property.

Two questions are presented in the case. 1. Did the storage company have authority to make the contract? 2. If so, was the contract valid?

The two barrels of chinaware not delivered were a part of a shipment of the household goods of plaintiff, and it appears that he left all of them in a house he had been occupying in Salt Lake City and directed the Redman Van & Storage Company to pack and ship them to him at Evanston. He gave the storage company no directions as to how they were to be shipped, and nothing was said by him about freight rates. The business of the storage company was storage, packing, shipping and moving. The release above set out was printed on the back of the bill of lading, and the bill was made out and the release signed in the name of the company at its office in Salt Lake City and delivered to the railroad company with the goods. The bill of lading was made out and the release signed in the name of the

company by its clerk, who testified that that was a part of his duties, that he had authority from the storage company to sign it, and that the release was signed for the purpose of securing the lower freight rate. The authority of the clerk to sign the release for the storage company is, we think, established by the evidence. It is not contended by counsel for defendant in error that the storage company was not the agent of Mr. Blyth for the shipment of these goods; and in fact no such contention could be sustained under the evidence. In such case, where the owner of goods directs his agent to ship the same without further directions or restrictions, the law implies authority in the agent to make a reasonable contract with the carrier limiting the carrier's liability; and if such contract is lawful the principal is bound thereby. The rule is stated in 5 A. & E. Enc. Law, 305, thus: "A consignor who sends goods to the depot of a carrier, for shipment, by an agent, impliedly authorizes such agent to make a special contract with the carrier as to the carriage of the goods, and the acceptance by such agent of a receipt or bill of lading, containing limitations upon the liability of the carrier, will bind his principal." And in 6 Cyc. 408: "One who has authority to ship goods for another has thereby implied authority to make a contract for their shipment involving a limitation of the carrier's liability." The rule is also stated in 1 Hutchinson on Carriers, (3rd Ed.) Section 457, as follows: "If the owner of the goods entrusts them to another for the purpose of having them delivered to the carrier for transportation, the person to whom they are so entrusted will be presumed to have authority to agree with the carrier upon the terms of shipment; and this authority will include the right to enter into a reasonable agreement on behalf of the owner restricting the carrier's liability as an insurer. And where the carrier is without knowledge that the person to whom the goods are so intrusted has no authority to enter into a contract restricting the carrier's common law liability, the mere acceptance by the latter of the carrier's receipt will operate to bind the owner of the

goods to its lawful limitations." The rule of law as stated in the texts above quoted is sustained by the numerous cases cited in the foot notes thereto, and need not be repeated here. The case at bar does not rest upon the mere acceptance of a receipt delivered by the carrier to the agent of the shipper, containing the limitations, but upon the written contract signed by the agent of the owner and delivered to the carrier with the goods. Such being the facts in the case, the principal was bound by the act of the agent, and the first question must be answered in the affirmative.

2. Was the contract valid? In discussing this question we must keep in mind the dual nature of the liability of a common carrier, and the distinction between its liability and that of an ordinary bailee for hire at the common law. Both are liable for loss occurring through their negligence or that of their servants or agents; and in addition to this the common carrier is also liable for loss or damage occurring from other causes, such as fire, robbery or accident not attributable to negligence of the carrier; excepting, of course, loss by the act of God, or of the public enemies, etc., which are well understood. The common carrier occupies a position in the nature of an insurer and his liability, other than for negligence, is so spoken of and treated in the books; and it is with such liability, under the pleadings in this case, that we are to treat. That we may not be misunderstood we have set out the language of the petition, from which it clearly appears that the action is based on contract and not in tort. It contains no averment, even in the most general terms, of negligence on the part of the carrier; nor does the reply contain any such charge. The question of negligence, therefore, is not in the case and will not be considered. It is well settled that a carrier may, by special contract fairly made, and entered into understandingly, and which is reasonable, limit his common law liability as an insurer. Counsel for defendant in error conceded that to be the law in the following language in his brief: "Whatever doubts may at any time have been entertained, it is now well settled that by special contract the

carrier may limit or qualify the liability resting on him as
an insurer or his common law liability—as it is most often
expressed." In 1 Hutchinson on Carriers, (3rd Ed.) Sec.
418, the author says: "The extent to which the carrier
may exonerate himself from responsibility by such express
or special agreements, where permitted, is, subject to the
exceptions to be hereafter considered, almost unlimited.
He cannot, of course, exonerate himself from the conse-
quences of the fraud or felony of either himself or of his
servants, though, as we have seen, it was formerly other-
wise in England as to the felony of his servants; and, as
will be hereafter seen, according to the weight of authority
in this country, based upon considerations of public policy,
he cannot contract for exemption from liability for losses
caused by his own or the negligence of his servants. But,
with these exceptions, there is no danger or risk which can
arise in the course of the transportation of the goods, or
of his connection with them, for which he cannot avoid
responsibility by a contract fairly and understandingly made
with his employer, upon the theory that the owner of the
goods, for the consideration which it is supposed he re-
ceives, either in the reduced compensation or in some equiv-
alent advantage, may surrender, if he will, the obligation
of the carrier as an insurer, to any extent he may choose."
This rule of law is so well established and recognized that
the further citation of authorities would be superfluous.
That the contract in this case was fairly and understand-
ingly made there can be no doubt from the evidence. It
was signed by the agent of the shipper and delivered with
the goods to the carrier, and on its face shows that it was
made for the purpose of securing a lower rate of freight
than would otherwise have been required, and it was in
consideration of such lower rate that the shipper released
the carrier from its liability as insurer to the extent stated
in the agreement. It also appears that the agent of the
shipper understood that he had the option to choose between
the higher rate binding the carriers as an insurer, and the
lower rate which the carrier accepted in consideration of

the limited liability. The validity of the contract is not questioned in the pleadings either by allegation that it was without consideration, or unreasonable for any cause. But the argument is that the carrier cannot by contract relieve himself from liability for loss resulting from his negligence. That may be conceded and we think the better reasoning and weight of authority is to that effect; but that question is not presented in this case. There being no allegation of negligence in either the petition or reply, it cannot be presumed that the loss was the result of negligence of the carrier. . The plaintiff proceeded on the theory that there was no contract limiting the carrier's liability and that, therefore, to be entitled to recover, all he had to do was to allege and prove the delivery of the goods to the common carrier and that it had failed to deliver them at the place of destination. There was no evidence showing the cause of failure to deliver. But, as we have seen, the goods were shipped under the terms of a special contract exempting the carrier from liability for loss in transportation not the result of its negligence; and loss by mere proof of failure to deliver in such case, in the absence of any allegation of negligence will not be attributed to a wrongful act when it can as well be attributed to other causes. In other words, the plaintiff in his pleadings in effect admits that the failure to deliver the goods was not on account of any negligence of the carrier, but because of its failure to perform its contract as an insurer. In that state of the pleadings, the special contract exempting the carrier from its liability as insurer being proven, the carrier was not called upon to introduce evidence to show that the cause of the loss came within the exemption and without negligence. The case does not come within the rule, sustained by many courts, that where a special contract limiting his liability is set up by the carrier, the burden rests on him to show that the loss was occasioned by the excepted cause, and that there was no negligence on his part. That rule, where sustained, is applicable in cases where negligence is alleged; and it has been held in such cases that proof of non-delivery was

*prima facie* evidence of negligence which the carrier was required to rebut. But where there is no issue of negligence, evidence tending to show it would be irrelevant. The case of Lancaster Mills v. Merchants' Cotton Press Co. et al., 89 Tenn. 1, was an action to recover damages for the loss of cotton by fire, the cotton being shipped under a contract exempting the carrier from liability for loss on that account. The court said: "This exemption would, however, be invalid as a protection against a loss by fire the result of the negligence of the carrier or its agent for compression. The bill fails to charge that the loss was due to any want of care, either upon the part of the carrier or of any of its agents or servants. Where, therefore, the pleadings show a valid stipulation for exemption from loss or damage by fire, and it is further shown that the failure of the carrier to safely carry and deliver was due to a loss by fire, no case is made against the carrier unless the fire be charged to have been the result of negligence. The burden of proof, when the loss is thus admitted to have been by fire, is upon the owner to prove negligence, and under plainest rules of pleading the plaintiff ought to allege in his pleading every fact necessary to·fix liability." In Larsen v. O. S. L. R. Co., (Utah) 110 Pac. 983, the pleadings were almost identical with those in this case, except, in the plaintiff's reply it was alleged that the agreement set up in the answer was "without consideration, unfair, unreasonable, and unlawful, and fraudulent, and against public policy." The court said: "The question whether contracts like the one passed on are enforceable in cases where the property is lost through the negligence or misconduct of the carrier or its agents is not involved, and hence is not passed on." In Wells v. Great Northern Ry. Co., (Ore.) 114 Pac. 92, the action was brought to recover the value of a trunk and contents, lost by the derailing and burning of a baggage car alleged to have been caused by the negligence of the defendant. The court said: "When in such an action the complaint sets forth the facts constituting the negligent act or omission, discloses, in logical

sequence, the facts composing the secondary agency, force or obstacle, if any, and details the resultant injury and the damages, the pleading is sufficient. In the case at bar, the complaint does not conform to these requirements, but, as the burden of proof rested on the defendant, a suggestion of negligence in plaintiff's primary pleading was, in our opinion, adequate for that purpose." In the present case there is neither a statement of the acts constituting negligence nor a suggestion of negligence. We have said this much in an endeavor to show the distinction between contracts limiting the liability of a common carrier as an insurer, and those attempting to relieve him from liability for negligence; and for the further purpose of showing the necessity of pleading negligence if it is relied upon to avoid the contract. In this case, there being no allegation in the pleadings that the contract was unreasonable or that the failure of the carrier to deliver the goods at destination was the result of negligence of the carrier, the contract must be held to be valid. The record does not disclose the basis of the decision of the district court, whether it was of the opinion that the plaintiff was not bound by the contract signed by the storage company, or was of the opinion that the contract was invalid. In either case we think it erred, and for that reason the judgment must be reversed and the case remanded for further proceedings.

*Reversed.*

POTTER, J., concurs.

SCOTT, J., was not present at the oral argument, but participated in the consideration of the case and concurs in the decision.

### ON PETITION FOR REHEARING.

BEARD, CHIEF JUSTICE.

The defendant in error has filed a petition for rehearing, but no questions not discussed and decided in the opinion handed down are presented. Counsel does not seem to keep in mind the distinction between the liability of a common carrier as an insurer and for negligence, and argues

the case on the theory that the contract was invalid because the law forbids such carrier to contract for exemption from liability on account of its negligence. But this is not that kind of a case. Negligence, in order to be proven, must be alleged; and we think we quite clearly explained that the petition in this case does not charge negligence. It is further urged that the agency of the Storage Co. was not established, because agency cannot be established by the declarations of one claiming to be agent. Here, again, we have no such question. No declarations or statements of the agent were offered in evidence. Mr. Blyth testified that he directed the storage company to pack and ship the goods, and the agent who did ship them was on the stand as a witness. It is true that agency cannot be established by the mere declarations of one claiming to be an agent; but it is equally true that such a one is a competent witness to prove his agency. It is further claimed that the railroad company admitted its liability by offering to confess judgment for $20. But nowhere did it admit that the loss was the result of any negligence on its part; and the plaintiff below might have taken judgment on the pleadings for $20. It is now argued that we should have directed such judgment to be entered instead of remanding the case for further proceeding. Probably, under our statutes, we might have done so; but we did not think we should deprive the plaintiff below of the privilege of applying to the district court for leave to amend his petition, if the facts would warrant an amendment and he be so advised. We see no good reason for departing from the decision as handed down, and therefore a rehearing is denied.

*Rehearing denied.*

SCOTT and POTTER, JJ., concur.