[No. 14840. Department Two. September 25, 1918.]

SPOKANE VALLEY GROWERS' UNION, *Respondent,* v.
SPOKANE & INLAND EMPIRE RAILROAD
COMPANY, *Appellant.*[1]

CARRIERS—OF GOODS—REFUSAL TO ACCEPT GOODS—LIABILITY. It was the duty of a carrier to accept the shipment and it is liable for refusal to do so, where, after a car of apples had been loaded, the carrier refused to accept the shipment pursuant to its tariff regulations, option No. 2, giving heater service and requiring the carrier to assume all liability for loss due to frost or heating, because a dispute arose as to whether the apples had been frost-bitten before loading, and the shipper then offered to indemnify the company against any claim for damages on that account, as it would in no event be liable therefor.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered January 9, 1918, upon findings in favor of the plaintiff, in an action for damages, tried to the court upon an agreed statement of facts. Affirmed.

[1]Reported in 175 Pac. 184.

*Graves, Kizer & Graves,* for appellant.
*Tustin & Chandler,* for respondent.

MOUNT, J.—This action was brought to recover damages for an alleged wrongful refusal to receive for carriage a carload of apples tendered by the plaintiff. The facts were stipulated. Judgment was rendered in favor of the plaintiff. The defendant has appealed.

The facts are as follows: The appellant is a common carrier of freight, as designated in the tariffs filed with the interstate commerce commission. The appellant maintained a rate jointly with the Great Northern Railway Company for carrying boxed apples in carload lots over its own line and that of its connecting carrier, the Great Northern Railway Company. Tariff 25C and supplement No. 7 provided as follows:

"In order that shipments of perishable freight may be protected from loss on account of frost, freezing or overheating during the period October 15th to the following April 15th, inclusive, the shipper shall either assume responsibility for such protection or request the carrier to do so.

"The shipper must specify on orders for empty cars, or in such manner as is provided by carrier prior to the loading, whether he desires to ship under Ventilation or Shippers' Protective Service (see Option No. 1, page 24 of tariff, and as supplemented), or under Carrier's Protective Service (see Option No. 2, page 25 of tariff, and as supplemented), and no change from one service to different service will be permitted after shipper has commenced loading of car.

"When the shipper neglects or refuses to specify as above provided, whether he desires the freight to be transported under Option No. 1, page 24 of tariff (and as supplemented) or under Option No. 2, page 25 of tariff (and as supplemented), the shipments will be transported subject to all the terms of Option No. 2, page 25 of tariff (and as supplemented), in which event the agent at the point of origin shall enter on

bill of lading and waybill the following endorsement: 'Protective service under terms of Option No. 2 assumed by carrier.'

"Shipper must make one of the following endorsements on bill of lading: 'Responsibility for damage from frost, freezing, overheating or protection against heat, assumed by shipper' or 'Liability for damage from frost, freezing or overheating to be assumed by carrier.' "

Under the head of option No. 1 it was provided:

"Under this option the shipper assumes all responsibility for loss due to frost, freezing or overheating not the direct·result of the negligence of the carrier.

"The following notation must be shown on bill of lading: 'Responsibility for damage from frost, freezing or overheating assumed by shipper.' "

Under the head of option No. 2 appears this provision:

"Under this option, the carrier assumes all liability for loss due to frost, freezing or heating, not the direct result of the negligence of the shipper.

"The following notation must be shown on bill of lading: 'Liability for damage from frost, freezing or overheating to be assumed by carrier.' "

Sometime prior to December 19, 1916, the respondent agreed to sell to one Sawyer, at Billings, Montana, 630 boxes of apples. Respondent was to ship the apples over the lines of appellant and one of its connecting carriers, either the Great Northern Railway Company or the Northern Pacific Railway Company, to Billings, Montana. Mr. Sawyer was to have the right to inspect the apples at Billings before his acceptance of the same. The price for the apples, according to the agreement between respondent and Sawyer, was $535.95, all freight and heater service charges to be paid by the purchaser upon the arrival of the apples at Billings. Under the agreement with Sawyer, re-

spondent was to ship the apples under option No. 2 of the tariff above described, the carrier to assume all liability for loss due to frost, freezing or heating not the direct result of the negligence of the shipper. Thereafter the respondent requested the appellant to furnish a car, to be routed via either the Great Northern or Northern Pacific railway, in which to ship the apples by heater service to Billings, Montana. Thereupon appellant applied to the Great Northern Railway Company for a refrigerator car, and, upon receiving the same from that company, furnished such car to the respondent. The car was No. 50132 of the Great Northern Railway Company. The appellant placed the car on its loading track or spur at Opportunity, Washington, and on the evening of December 19, 1916, notified the respondent that the car was so placed and was ready to be loaded. Thereupon, on the next day, the respondent loaded 630 boxes of apples upon the car. These apples were packed in boxes of the Northwest standard size; the tops, sides and bottoms of the boxes were securely nailed on, entirely enclosing the fruit, except for three cracks, one-half inch wide, extending lengthwise on the top and bottom of the boxes. The apples were each separately wrapped in paper and packed in layers in the boxes. Prior to the loading of the apples, they had been kept and stored in a natural air storage, intended and believed to be thus protected against frost, and had not previously been stored or shipped under refrigeration. On the same day, December 20, 1916, respondent, by its president, Edward Pierce, requested from the appellant, through its agent at Opportunity, a bill of lading for said apples, which bill of lading was then and there made out in triplicate and tendered by the respondent to the appellant, a copy of which is attached to the statement of facts; and at

that time wrote a letter to the agent as follows, omitting the date and address:

"Dear Sir: You are hereby advised that GN car 50132 furnished by you on our recent order for an NP or GN car in which to ship box apples heater service, to Billings, Montana, is now loaded and ready to move at your station.

"We desire this car shipped to our order, notify J. M. Sawyer, Billings, Montana; the shipment to be subject to inspection and diversion with 'liability for damage from frost, freezing or overheating to be assumed by carrier.'

"We have prepared and herewith tender and leave in your possession standard bill of lading filled out as above which we request that you forthwith sign and return the original and one duplicate to us.

"We would further advise you that the said car of fruit, now loaded and on your switch at Opportunity is hereby delivered into you possession for transportation in accordance with said billing, and we request that you immediately move and transport said car of apples to its destination in accordance with said billing.

"The weather indications are now such that the said fruit may, and likely will be endangered if the said car is not supplied with proper protection.

"Please take notice of all the above matters and take such immediate action in the premises as may be necessary to perform your full duty with reference to said shipment.  Spokane Valley Growers' Union."

Thereafter, on December 22, 1916, the appellant addressed a letter to Mr. Pierce as follows:

"My Dear Sir: This formal notice is to confirm the oral notices heretofore given to you that the apples which you have loaded in Great Northern Car No. 50132 on the tracks of the Spokane & Inland Empire Railroad Company at Opportunity cannot be accepted for shipment under Option No. 2 bill-of-lading which provides for carrier's responsibility, for the reason that an inspection of said apples made when said car was being loaded, disclosed to us that certain apples

loaded therein have been frost-bitten. You have at all times been offered and are now offered the privilege of shipping these apples under bill-of-lading Option No. 1 which provides for shipper's responsibility.

"In view of your repeated refusals to do anything with reference to these apples, you are hereby notified that unless you remove these apples from the car in which you have loaded them, within twenty-four hours from the time when this notice is served upon you, or unless within said period of time you accept a bill-of-lading under Option No. 1 providing for shipper's responsibility or accept a bill-of-lading under Option No. 2 with the notation thereon that the apples contained in the car are frost-bitten, at the time of receipt, it will be necessary for us to store at your expense these apples in the public warehouse of .................. at .................., where the apples will be held by the warehouseman at your expense and subject to your order.          Yours very truly,

"Spokane & Inland Empire Railroad Co."

Thereupon the respondent, by its president, addressed a letter to the appellant as follows:

"Dear Sir: Your letter or notice of yesterday relative to GN car 50132 was handed us by Mr. Piper at nine a. m. this morning.

"We note your offer to allow this car to proceed under option one at our risk, and beg to advise that we cannot so ship. The purchaser has ordered these apples to be shipped under heater service. We ordered and you furnished the car to be shipped under option two, and we have so loaded and delivered it into your possession so manifestly we cannot now permit you to change the billing.

"We note that you state as a reason for asking this change: 'that an inspection of said apples made when said car was being loaded disclosed to us that certain apples loaded therein have been frost-bitten.' This car contains 7 different varieties of apples. While your communication does not disclose what varieties are supposed to have been frost-bitten, we are verbally advised by your agents that only the Stayman Wine-

sap and Spitzenberg are involved. For your information would state that the car contains but 95 boxes of Stayman Winesaps, 70 being of the extra fancy and 25 of the fancy grade, and 49 Spitzenberg all of the "C" grade.

"We would further advise you that since the car was first visited by your inspector we also have had said fruit examined and inspected by four or five reputable and experienced fruit men, who have severally reported to us that the varieties objected to by your inspector have not been frozen or frost-bitten. This is in accordance with our own views, and it must be manifest to anyone that we cannot permit you to make any notation on the bill of lading that would conflict with what we conceive to be the truth, that these apples have not been frozen or frost-bitten.

"We will very much regret, if the stand you are taking in this matter should lead to legal controversy, and in order to obviate that result, but without in any way admitting or conceding that any of the fruit contained in said car has been frozen or frost-bitten prior to loading, we would, and hereby do, undertake to indemnify you and your connecting carrier against any claim that may be set up or asserted against either of you by reason of any alleged frost damage prior to the loading of said fruit.

"While it has not been your practice to require any guarantee of freight on shipments heretofore carried for us, we would be and are perfectly willing to guarantee the payment of the freight on this shipment in order to insure the prompt movement of same in accordance with the billing we have tendered you.

"Trusting this may remove any doubt you may entertain as to the condition of said fruit and induce you to go ahead and perform your full duty with respect to the transportation of said fruit and the issuance of a proper bill of lading therefor, we remain,

"Spokane Valley Growers' Union."

The freight was not moved thereafter, and the apples were thereupon stored in a warehouse in Spokane and subsequently sold for the sum of $286.10, which

amount was deposited with the clerk of the court to be held by him until the determination of this action.

On these facts the trial court concluded that the respondent was entitled to recover for the failure of the appellant to carry the apples, and gave judgment accordingly. It is apparent from this statement of the facts that, after the apples were loaded on the car, which was furnished by the appellant to the respondent under option No. 2, a dispute arose between the shipper and the agent of the carrier as to whether or not the apples had been frost-bitten. The carrier contended that the apples had been frost-bitten, and the shipper contended that they had not been frost-bitten. The carrier thereupon refused to carry the apples under option No. 2, by which it assumed all liability for loss due to frost, freezing or heating not the direct result of the negligence of the shipper. The shipper thereupon offered to indemnify the appellant and its connecting carrier against any claim that might be set up against either by reason of any frost damage prior to the loading of the fruit. This offer was declined and the fruit was not shipped.

The appellant argues that it had a right to make reasonable rules and regulations with reference to the carriage of fruit; that, when its inspectors found that part of the fruit had been frost-bitten, it had a right to have this notation made upon the bill of lading. If we may assume that, appellant could refuse to ship the fruit without a statement of its true condition. The claim that a part of the fruit was frost-bitten was disputed by the shipper, which offered to indemnify the carrier against any claim for damage on that account. Under these circumstances, we think it was the duty of the carrier to accept the fruit and to carry it as requested by the respondent. The appellant is a common carrier of freight. It was bound to take all freight

which was offered. 4 R. C. L., § 137, page 658. It was liable only for its own negligence. 4 R. C. L., §§ 200, 201, pages 728 to 730; 10 C. J., § 148, page 121. Even under option No. 2, quoted above, it was not liable for negligence of the shipper, and if the shipper loaded apples which had been frost-bitten, and which on that account, and not on account of the negligence of the carrier, became lost, the loss would fall upon the shipper and not upon the carrier.

We are satisfied, therefore, that the trial court rightly decided the case.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, MACKINTOSH, and PARKER, JJ., concur.