**HUSKY HI-POWER, INC., Appellant**
(Plaintiff below),

v.

**SALT CREEK FREIGHTWAYS, Appellee**
(Defendant below).

No. 3021.

Supreme Court of Wyoming.

Dec. 5, 1961.

Leonard E. Lang, Casper, for appellant.

Murane, Bostwick & McDaniel, Edward E. Murane, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case the plaintiff, Husky Hi-Power, Inc., sued the Salt Creek Freightways, a carrier, because it delivered gasoline and diesel fuel into the wrong tanks owned by the plaintiff. The court held that the carrier was without fault and from that judgment the plaintiff has appealed.

The appeal was brought here under Rule 76, Wyoming Rules of Civil Procedure, relating to bringing an appeal to this court upon an agreed statement of facts. Aside from stating the rules of law involved herein, the parties stipulated the facts as follows:

"On July 14, 1959, the #33 Husky Super Stop service station, located on

West Yellowstone Highway, near Mountain View Addition, Casper, Wyoming, ordered 2,250 gallons of #2 Diesel Fuel, and 3,700 gallons of regular gasoline to be delivered at said station. The defendant, Salt Creek Freightways, acting by and through its driver, one Dick Loghry, obtained the fuel from the Standard refinery and hauled it to said service station, a lessee of Husky Hi-Power, Inc.

"After his arrival there the driver, Loghry, asked one of the attendants working on the 'deck' to break the seal on top of the tank, as he had an injured leg. He also asked this attendant if Hi-Power was 'Regular' or 'Ethel', to which the attendant, Ronald Pinn, replied that it was 'Regular'. Pinn broke the seal as requested, and then returned to his duties as attendant. At no time did the driver ask Pinn anything about the tanks into which the fuel was to be delivered, nor did he ask anyone else working at the station about the tanks. He had been instructed by one of his employers, before leaving the Salt Creek Freightway Yards, that the caps on the tanks were marked as follows: 'R' for regular and '2' for the diesel fuel. Mr. Loghry unloaded the fuel, putting regular in the tank with an 'R' cap and diesel in the tank marked '2', and then made application to someone at the station for the check to cover it. Mr. Bill Wilson, manager of the station, was called at his home to come and sign a check for Loghry. He, Loghry, decided to return to town without waiting for the check, and proceeded to do so. Shortly after Mr. Wilson arrived at the station, he noticed the exhaust pipe on one of the cars which had just been serviced emitting dark smoke, and immediately suspected what had happened. He checked the pumps and ascertained that the fuel delivered by Mr. Loghry had been unloaded in the wrong tanks, i. e., the diesel fuel had been unloaded in the regular gasoline tank, and the regular gasoline had been unloaded in the diesel fuel tank. He then called Salt Creek Freightways and advised them what had happened. A Mr. Tim Barrett, together with Dick Loghry, came to the station to make inspection of the matter. When the parties went to look at the tanks, it was discovered that the caps were placed on the wrong tanks, i. e., regular gasoline tank fill pipe cap on the diesel, and vice versa. At the hearing it was testified by Mr. Loghry that he filled the tanks according to the marking on the caps over the respective fill pipes. In contradiction thereto, the employees of the station who checked the fuel on the morning of the date in question testified that they had replaced the caps on the proper fill pipes and the customary manner of checking them was to guage the tanks, record the reading, and replace the cap before moving on to the next tank. It was further testified, without contradiction, that caps were constructed of heavy metal and the tanks were buried underground with a distance of approximately 11'6" between the caps. It was testified by witnesses for the defendant that Salt Creek Freightways had marked the caps themselves, and had requested that said service station attach them to the fill pipe in some manner, but this had not been done.

"There was no contract, express or implied, limiting the defendant's liability as a common carrier. Suit was brought by plaintiff, on two theories, i. e., contract and negligence.

"The Court found, as a matter of fact, that the caps on the two tanks had been switched before the delivering of fuel by Loghry."

The trial court was not satisfied with the agreed statement of facts and made

the following supplemental statement as follows:

"The foregoing statement of fact is in my opinion substantially correct, excepting for the omission of the following, which should be included in the statement of the case:

"1. That the delivering employee of the defendant was making his first delivery and acting solely under the instructions of his employer.

"2. That Mr. Pinn, employee of the plaintiff mentioned in the statement, was new and had no actual knowledge of the true identity or location of the tanks, excepting his knowledge that Hi-Power was a 'regular' gasoline.

"The statement of the questions by counsel does not in my opinion embrace all of the factors and elements which were involved in my decision, but since it has been difficult for counsel to rephrase questions to satisfy the Court, I do not wish to disturb said questions excepting to add the qualification that other factors than those included in the questions were involved in my decision, namely, the failure by the service station-consignee, in my opinion, to exercise the requisite care for its own protection, the failure of the service station to have the proper identifying caps upon the tanks in question at the time of the delivery of the fuels by the defendant, the arrangement adopted between the carrier and the service station in the furnishing by the carrier of marked caps for identification to be used for capping the respective tanks at the service station, and the reliance upon such arrangement by the carrier in making delivery, the sole control by the service station of the caps and the tanks, excepting removal by the carrier for delivery of fuel, the confusion of the caps without the knowledge of defendant carrier's delivering employee. Whether or not stated in the foregoing enumeration, the question of contributory negligence on the part of the plaintiff in the confusion of the caps without any notice thereof to the defendant carrier.

"With the foregoing additions and qualifications, the statement of questions and of the case, signed by counsel for both sides, is approved."

It is the contention of the plaintiff and appellant that it was the duty of the carrier to determine for itself that the gasoline and diesel fuel were delivered to the proper tanks. Counsel cites us to the case of Oregon Short Line Ry. Co. v. Blyth, 19 Wyo. 410, 118 P. 649, 119 P. 875, Ann.Cas.1913E, 288. That case involved nondelivery of goods and the court discussed the large responsibility imposed upon a carrier to deliver the goods. The case at bar does not involve nondelivery of goods; hence, the responsibility of a carrier in connection with nondelivery need not be discussed herein and the case cited is not in point. Counsel also cites us to the case of Mexican Nat. R. Co. v. Savage, Tex.Civ.App., 41 S.W. 663. In that case the shipper delivered 606 head of cattle to the carrier to be delivered at Laredo. The evidence indicated that during the shipment the cattle were mistreated and some eighty-four head were trampled to death. The railway was held liable for the damages, the court saying in part at 41 S.W. 665, "We think the court correctly held that, in assuming the duty of unloading the cattle at Laredo, the defendants were bound to unload them in a proper manner, and that they are liable for any damage which resulted from their failure to do so." It is quite evidence, though the wording of the court is somewhat peculiar, that the case is in no way analogous to the case at bar. We are also cited to the case of Weisinger v. Southern Ry. Co. in Kentucky, 129 Ky. 592, 112 S.W. 660, 33 Ky.Law Rep. 1038, involving the shipment of a valuable hog. The court stated that if the shipper had placed the hog in a car without asking the railway company he could not hold the railway company liable,

but that if he first asked the railway company into what car he should put the hog and then placed the hog in the wrong car according to the direction given by the railway company, the latter would be liable for the damage. It would seem to be clear that this case sheds no light on the case at bar. It is of course not surprising that counsel has not found any case in point herein since a situation like that at bar would not happen very often. We have made a diligent search and have not found any cases in point. Hence, in order to arrive at a proper solution herein, we must rely on our sense of justice and such general rules of law as may be applicable in this case. What was the duty of the carrier? If the delivery of the gasoline and diesel fuel into the wrong tanks was due to the fault of plaintiff, the carrier is not liable. Shapiro v. Pennsylvania R. Co., 65 App.D.C. 324, 83 F.2d 581; Austin v. Seaboard Air Line R. Co., 5 Cir., 188 F.2d 239. The carrier was liable only for its own negligence, not for the negligence of the plaintiff. Spokane Valley Growers' Union v. Spokane & I. E. R. Co., 103 Wash. 587, 175 P. 184. In 13 C.J.S. Carriers § 79a, speaking of injury to goods, it is stated: "The measure of the carrier's duty is to exercise reasonable care and diligence to protect the goods from loss or injury while in its custody." Did the carrier in this case exercise reasonable care? If so, it cannot be held liable herein. Let us consider the facts. The plaintiff had a service station which was under its complete control. It had an attendant when the gasoline and diesel fuel were delivered at the service station. Unfortunately this attendant paid no attention to the delivery except to say that Hi-Power (gasoline) was "regular". He apparently was new at the station but that was not the fault of the carrier. The plaintiff had two tanks in the service station, one of which was used for gasoline and the other for diesel fuel. These tanks had caps for entrance of the gasoline and diesel fuel. These caps had been furnished by the carrier some time previously and by arrangement of the parties were attached to the respective tanks for identification, the one for gasoline being marked "R" and the one for diesel fuel being marked "2". The caps were apparently in their proper place on the morning of the day when the gasoline and diesel fuel in question were delivered but in some way were switched during the day. That was not the fault of the carrier. It would seem to be clear that it was the duty of the plaintiff to see that no such switch took place, especially at a time when it was expecting delivery of such gasoline and diesel fuel. It had exclusive control of the premises and it was plaintiff's duty to keep proper order. The agent of the carrier had been instructed to place the gasoline in the tank marked "R" and the diesel fuel in the tank marked "2". He did so. We think that the trial court was justified under these facts to find that the carrier used reasonable care in delivering the property in question and cannot be held liable for any damages.

■ Assuming, however, without deciding, that the trial court could rationally have arrived at two different conclusions—one finding the carrier at fault and the other finding the plaintiff at fault—in such case we cannot disturb the conclusion arrived at by the trial court. Hench v. Robinson, 75 Wyo. 1, 291 P.2d 417; Firth v. Southern Pac. Co., 44 Cal.App. 511, 186 P. 815; Hatzakorzian v. Rucker-Fuller Desk Co., 197 Cal. 82, 239 P. 709, 41 A.L.R. 1027; Bowden v. Wooden, 125 Cal.App. 115, 13 P.2d 811. That rule applies even when the evidence is undisputed as in the case at bar. Hines v. Sweeney, 28 Wyo. 57, 201 P. 165, 1018; O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582, rehearing denied O'Malley v. Eagan, 43 Wyo. 350, 5 P.2d 276, 77 A.L.R. 582. In the Hines case we said at 201 P. 170, "Even though the facts are undisputed, still, if more than one inference can be drawn therefrom, the question of negligence is for the

jury." In the case of Maine Water Co. v. Knickerbocker Steam Towage Co., 99 Me. 473, 59 A. 953, 958, the court stated:

" * * * Ordinarily care and negligence are questions of fact, and this is so even if the circumstances attending it are agreed to or admitted, or are indisputed, when reasonable and fair-minded men may arrive at different conclusions. Grows v. Maine Central R. Co., 67 Me. 100; Elwell v. Hacker, 86 Me. 416, 30 Atl. 64; Romeo v. B[oston] & M. R. R., 87 Me. 540, 33 Atl. 24. * * *"

We think that we are constrained to hold that the judgment of the trial court should be, and it is, affirmed.

Affirmed.